## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I, Jennifer I. Banks (hereinafter "Affiant"), being duly sworn, depose and state as follows:

1. I have been a Special Agent with the FBI since 2003. I am currently assigned to the Violent Crimes Squad CR-2, Criminal Division of the Washington Field Office ("WFO") of the FBI. During my career, I have participated in numerous criminal investigations, including but not limited to, bank robberies, kidnappings, fugitives, threats against government employees, white collar crime, computer intrusions and international terrorism. I have assisted with writing several search-warrant applications that have resulted in the issuance of search warrants and that have resulted in the recovery of evidence in criminal investigations.

2. This affidavit is being submitted in support of an application for a search warrant to be executed at 336 63rd Street, NE, Apartment 302, Washington, D.C.

3. The facts and information contained in this affidavit are based on personal knowledge, as well as on the observations of other agents and officers involved in this investigation. This affidavit contains information necessary to support probable cause and is not intended to include each and every fact and matter observed by me or known to the government.

### May 6, 2009

4. On May 6, 2009, complainant, "C-1" received a phone call or phone calls asking him to meet with an acquaintance that C-1 has known for several years, who C-1 knew as "FLOYD." Following those calls, C-1 drove his maroon-colored Toyota Highlander to the area of 51st Street and Fitch Street, SE, Washington, DC, where C-1 parked C-1's vehicle to wait for FLOYD. FLOYD approached C-1's vehicle, walked up to the passenger window, and unlocked the door. FLOYD got inside the vehicle to talk to C-1. While FLOYD was in the vehicle, C-1's telephone rang from the telephone number FLOYD had used to call C-1. FLOYD told C-1 the

telephone was his "man's telephone." As C-1's telephone was ringing, FLOYD'S "man," hereinafter referred to as S-2, approached C-1's vehicle and entered the back seat of C-1's vehicle. FLOYD pointed a silver semi-automatic weapon to C-1's head and told C-1 to get in the back of the vehicle. FLOYD and S-2 then occupied the front driver and passenger seats. S-2 drove the vehicle, while FLOYD pointed the gun back toward C-1.

5. FLOYD and S-2 robbed C-1 of his wallet, which contained $140.00 in U.S. currency. FLOYD and S-2 also robbed C-1 of his gold and diamond clustered ring, gold Rolex watch, gold diamond-cut Gucci necklace with a gold crucifix charm, and two (2) cellular telephones. S-2 asked C-1 "where's the money at?" FLOYD and S-2 told C-1 they knew where C-1 lived and would kill C-1's family. FLOYD attempted to place a plastic bag over C-1's head, but C-1 began kicking and subsequently kicked FLOYD. FLOYD hit C-1 on the head with the butt end of the pistol, causing a knot and deep gash over C-1's left eye. FLOYD ordered S-2 to drive.

6. FLOYD and S-2 drove C-1 around the block where C-1 resides. FLOYD and S-2 asked C-1 if there was money in C-1's house. C-1 initially denied having money, but then told FLOYD and S-2 that C-1 had money at a storage facility on Kenilworth Avenue in Bladensburg, Maryland. C-1 was then forced to the floor of the vehicle with the vehicle seat over the top of C-1 to restrict movement.

7. FLOYD and S-2 drove towards the storage facility but then stopped at a 7-11 store to buy a bottle of water and a band-aid. To prepare C-1 to enter the storage facility on Kenilworth Avenue, FLOYD cleaned C-1's wound and placed a band-aid on the wound. FLOYD also gave C-1 one of the two shirts he was wearing since C-1's shirt was bloodied.

8.   Surveillance video from May 6, 2009, at the 7-11 store located at 4199 Kenilworth Avenue, Bladensburg, Maryland, revealed S-2 in the store purchasing band-aids and water.  S-2 paid with cash and immediately left without collecting his change.  That same video shows C-1's vehicle waiting outside while S-2 was purchasing the band-aids and water.

9.   FLOYD and S-2 pulled into the U-Store facility at 3860 Kenilworth Avenue in Bladensburg, Maryland.  FLOYD and C-1 entered the storage facility to inquire about C-1's storage unit.  There was no storage unit in C-1's name.  Accordingly, FLOYD and C-1 exited the U-Store.  Upon exiting, C-1 escaped from FLOYD and ran to a nearby apartment building, yelling "call the police!"  A resident allowed C-1 into the apartment to call the police.

10.   Surveillance video from the U-Store facility on May 6, 2009, shows FLOYD and C-1 in the U-Store facility.  C-1 appears to have a band-aid above his eye in the surveillance video.  The video captures FLOYD and C-1 exiting the facility and C-1 running from FLOYD.  The video further reveals FLOYD running after C-1, as C-1 fled, and a vehicle also following behind C-1 in pursuit.  The vehicle pursuing C-1 and FLOYD was a maroon-colored vehicle matching the description of C-1's vehicle, which S-2 and FLOYD had earlier commandeered.

11.   During an interview several days later, a witness advised that two unknown black males entered the U-Store facility on May 6, 2009, including one male who identified himself by C-1's name.  The witness confirmed that the witness saw substantially what was contained on the surveillance video referenced above.  This same witness was shown a photo array that included a picture of FLOYD, but indicated that the individual kept his face low, making it difficult to identify the individual in a photo array.  The witness indicated that she thought an individual in the array, who was not FLOYD, "looks a little bit like" and "resembled . . . a lot"

3

the male who accompanied C-1.

12. On May 6, 2009, C-1 was interviewed at the hospital where C-1 was waiting to be treated for a laceration above the left eye and a bruised ankle.

13. C-1 described FLOYD as a black, male, 6'2", 220 lbs, late 30's, medium complexion, corn-row hair style with a mustache and goatee.

14. C-1's vehicle was recovered and searched. Items recovered included C-1's bloodied shirt, a bottle of water, a box that contained band-aids, a necklace chain link, C-1's wallet, and a cellular telephone.

15. On May 15 2009, C-1 called S-2 on the telephone number that S-2 had used to call C-1 on May 6, 2009. C-1 asked S-2 to have C-1's cellular telephone's SIM card returned. C-1 also asked S-2 to have FLOYD call C-1. During the call, S-2 did not deny knowledge of FLOYD or the SIM card. The May 15, 2009, phone call between C-1 and S-2 is recorded and in the possession of the FBI.

16. C-1 contacted the FBI again on May 13, 2009. C-1 indicated that, because FLOYD was a prior acquaintance and FLOYD and C-1 had other acquaintances in common, C-1 had been able to learn FLOYD's last name. C-1 identified FLOYD as FLOYD CLARK. Based upon this and other information gathered during the investigation, the undersigned was able to obtain a photograph of CLARK that was taken on September 25, 2006. C-1, who had known FLOYD for a period of years, positively identified FLOYD as FLOYD CLARK, the individual who had kidnapped C-1 at gunpoint on May 6, 2009.

**Residence of 336 63 Street, NE, Apartment 302, Washington, D.C. 20019**

19.     C-1 stated that FLOYD CLARK resides in the area near where C-1 was initially kidnapped at 51st and Fitch Street, SE.  This is 1.51 miles from the 336 63 Street, NE, Apartment 302, Washington, D.C.

20.     Washington Area Law Enforcement System, WALES, a law enforcement database system, lists FLOYD CLARK's address as 336 63 Street, NE, 302, Washington, D.C. This report was generated on May 19, 2009.

21.     Accurint, a law enforcement database system, lists FLOYD CLARK's address at 336 63rd Street, NE, Apartment 302, Washington, D.C.  The Accurint address was reported for FLOYD CLARK as late as May 2009, meaning that the data has been recently updated with a new report.  This report was generated on May 14, 2009.

22.     Washington, D.C., Metropolitan Police Department Columbo, Criminal Intelligence System, law enforcement database system, provides as the address for FLOYD CLARK 336 63 Street, NE, Apartment 302, Washington, D.C.  This report was generated on May 13, 2009.

23.     The District of Columbia's Department of Motor Vehicles indicates that FLOYD CLARK has an expired Motor Vehicle Operator license.  That license indicates that FLOYD CLARK resides at 336 63 Street, NE, Apartment 302, Washington, D.C.

**Conclusion**

24.     In my experience, and through conversations with my fellow agents and other law enforcement, individuals who commit these types of offenses will often store the stolen items at their homes and/or other locations where they reside or frequent.

25. Further, in my experience and through conversations with my fellow agents and other law enforcement, individuals who commit these types of offenses will commonly maintain addresses and telephone numbers or papers that reflect names, addresses and/or telephone numbers for their associates in their illegal activities. These individuals will often utilize cellular telephones, pagers, and other telephone systems to maintain contact with their associates. These telephone records, bills, and paper numbers are often found in their place of residence.

26. Individuals who engage in these types of offenses often take photographs of themselves, their associates, their property and their illegal contraband. These photographs are often found in their place of residence.

27. Your affiant asserts that the facts contained within this affidavit establish probable cause to believe that evidence of crime and any and all instruments or proceeds of the crime is being kept at 336 63 Street, NE, Apartment 302, Washington, D.C.. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment A.

                                                                                              Special Agent Jennifer I. Banks
                                                                                              Federal Bureau of Investigations

Subscribed and sworn before me, this ____ day of May 2009.

                                                                                             The Honorable Alan Kay
                                                                                            United States Magistrate Judge